**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| **Danny Allen Stone, a/k/a Adnan Allen Fakaraldine Stone,** | Civil No. 10-4664 (RHK/JJG) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| **Cal Ludeman,** | |
| Respondent. | |

JEANNE J. GRAHAM, United States Magistrate Judge

This case is before the undersigned United States Magistrate Judge on Danny Allen Stone's petition for a writ of habeas corpus. The petition was filed pursuant to 28 U.S.C. § 2254 and was referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons set forth below, the Court recommends that the petition be denied.

**I.   BACKGROUND**

Petitioner Danny Allen Stone ("Stone") is a civilly committed detainee in the Minnesota Sex Offender Program (MSOP). In May 2005, Waseca Police Captain Michael Anderson filed a petition for the civil commitment of Stone as a sexually dangerous person ("SDP") and a sexual psychopathic personality ("SPP"). (Answer App. Ex. 1.) A commitment hearing was held in Waseca County District Court in July 2005. (Answer App. Ex. 2.) The State introduced evidence of several sexual contacts and assaults of juvenile females, including Stone's own testimony, as well as reports and testimony from two court-appointed medical experts. The State also introduced evidence of two prior convictions for criminal sexual conduct. Despite this evidence,

the state district court found that Stone did not meet the statutory requirements for designation as an SDP or SPP and denied the petition.

The State appealed the adverse determination to the Minnesota Court of Appeals, which found that Stone met the criteria for commitment as an SDP and reversed the lower court. *In re Civil Commitment of Stone*, 711 N.W.2d 831, 841 (Minn. Ct. App. 2006) ("*Stone I*"). The Minnesota Supreme Court denied Stone's request for review on June 20, 2006, and judgment was entered two days later.

Subsequently, Stone was temporarily committed as an SDP pending a sixty-day review hearing. (Answer App. Ex. 9.) After a short, stipulated extension, the final review hearing occurred on November 17, 2006. The resulting order, issued on November 27, 2006, indeterminately committed Stone as an SDP to MSOP, pursuant to Minn. Stat. § 253B.02, subds. 18b and 18c. (Answer App. Ex. 10.) Stone did not appeal that decision.

On December 13, 2007, one of Stone's two prior convictions for criminal sexual conduct was vacated by the state district court, based on a procedural defect with his guilty plea. *See In re Civil Commitment of Stone*, No. A09-0574, 2009 WL 2998131, at *1 (Minn. Ct. App. Sept. 22, 2009) ("*Stone II*"). Rather than retry Stone, the State dismissed the charge.

On February 4, 2009, Stone filed a motion pursuant to Minnesota Rule of Civil Procedure 60.02(e)[1] in Waseca County District Court to vacate the order for temporary commitment and the November 27, 2006 order for final commitment order, on the ground that the vacated charge made his commitment inequitable and unjust. (Answer App. Ex. 11.) The state district court

---

[1]  Rule 60.02(e) allows a person to seek relief from a judgment that was based on a prior judgment, when the prior judgment has been reversed, vacated, or is no longer equitable. Minn. R. Civ. P. 60.02(e).

agreed, granted the motion, vacated the final civil commitment order, and ordered a new trial. (Answer App. Ex. 15.)

Before the district court held the new trial, however, the State appealed the decision to the Minnesota Court of Appeals. (Answer App. Ex. 16.) That court reversed upon concluding that "the vacation of the 2004 guilty plea was not the basis for [Stone's] indeterminate commitment[,] and the facts that made [Stone's] indeterminate commitment equitable have not changed." *Stone II*, 2009 WL 2998131, at *3. Noting that the conviction was vacated for a procedural rather than a substantive reason, *id.* at *1, the court emphasized that neither Stone's testimony about his sexual conduct nor expert witness testimony about his likelihood to reoffend was negated, *id.* at *2. Stone appealed, and the Minnesota Supreme Court denied further review on November 24, 2009. Judgment was entered on January 6, 2010.

On July 1, 2010, Stone filed a Minnesota Rule of Civil Procedure 60.02(f)[2] motion in Waseca County District Court, raising several federal constitutional claims. (Answer App. Ex. 21.) Insofar as the motion challenged Stone's original commitment, the district court denied relief. (Answer App. Ex. 22.) To the extent the motion concerned the adequacy of treatment and punitive nature of confinement, the court treated the motion as a state habeas petition. The court denied both claims raised in the petition on September 3, 2010, and Stone did not appeal.

Stone filed his initial federal habeas petition on November 18, 2010. The petition did not conform to Rule 2(c)(5) of The Rules Governing Section 2254 Cases, and he was instructed to file an amended petition. Stone timely filed an amended petition, which is now the operative petition in this action, on December 16, 2010. (Doc. No. 11.) He raises four grounds for relief.

---

[2]   Through a Rule 60(f) motion, a person may seek relief from a judgment for any reason. Minn. R. Civ. P. 60(f).

First, he claims that he did not receive a full and fair hearing at his original commitment trial in 2005, due to inadequate fact-finding procedures. Second, he challenges the reliability of expert testimony given at the 2005 commitment trial on the ground that the experts relied on the vacated conviction in forming their opinions. Third, he contends that the Minnesota Court of Appeals' 2009 decision violated his right to due process, because he did not receive a new trial as ordered by the state district court when it granted his Rule 60.02(e) motion. Fourth, he argues that the Minnesota Court of Appeals' 2009 decision violated due process by reinstating his civil commitment despite the vacated conviction.

## II.     DISCUSSION

An individual civilly committed as an SDP may challenge his commitment through 28 U.S.C. § 2254. *See Beaulieu v. Minnesota*, 583 F.3d 570, 573 (8th Cir. 2009). On review of a § 2254 petition, the question for the Court is whether the commitment violates the United States Constitution or clearly established federal law. *See id.* (citing 28 U.S.C. § 2254(a)). Only three circumstances will give rise to habeas relief: (1) if a state court decision was contrary to clearly established federal law, (2) if a state court decision involved an unreasonable application of clearly established federal law, or (3) if the state court decision was based on an unreasonable factual determination. *See* 28 U.S.C. § 2254(d).

There are also several procedural constraints applicable here, one of which is the limitations period set forth in 28 U.S.C. § 2244(d).

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (d)(2) The time during which a properly filed application for State postconviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

In addition, a federal court may not entertain a § 2254 petition unless the individual in state custody has exhausted all available state court remedies. 28 U.S.C. § 2254(b)(1)(A); *see Turnage v. Fabian*, 606 F.3d 933, 936 (8th Cir. 2010) ("Before seeking habeas corpus relief under § 2254, a prisoner ordinarily must 'fairly present' his federal claims to the state courts."). If the petitioner has the right under state law "to raise, by any available procedure, the question presented," the claim is not exhausted. 28 U.S.C. § 2254(c). The purpose of this requirement is to give state courts the first opportunity to correct the alleged errors. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). To satisfy the exhaustion requirement, the individual must present the federal nature of his or her claim to each level of the state courts. *Id.* at 845 (explaining that comity compels the individual to "use the State's established appellate review procedures before he presents his claims to a federal court.").

### A. Stone's Due Process Challenge to Fact-Finding Procedures in the 2005 Commitment Trial

Stone's due process challenge to the fact-finding procedures utilized in the 2005 commitment trial is barred by the one-year statute of limitations set forth in § 2244(d). Nothing in Stone's submissions indicates that clauses (B), (C), or (D) of § 2241(d)(1) would be applicable here. That is, there is no indication that the State created an impediment preventing Stone from seeking federal habeas relief within the limitations period, no suggestion that Stone's current claims are based on a newly recognized and retroactively applicable constitutional right, and no new evidence warranting an extension of the limitations period.

Under § 2244(d)(1)(A), the one-year statute of limitations applicable to claims arising from the 2005 commitment trial began running when the time expired for Stone to seek review of the Minnesota Supreme Court's decision. Stone had ninety days from the entry of judgment by the Minnesota Supreme Court to petition the United States Supreme Court for a writ of certiorari. *See* Sup. Ct. R. 13.1. The Minnesota Supreme Court denied Stone's request for review on June 20, 2006, and judgment was entered on June 22, 2006. Thus, Stone had until approximately September 22, 2006 to petition for certiorari. The one-year statute of limitations applicable to claims arising from the round of decisions in 2005 and 2006 began running on that date and expired on approximately September 22, 2007, long before Stone filed the instant habeas petition.

The doctrine of equitable tolling does not save Stone's claim. Equitable tolling is available only "when extraordinary circumstances beyond a prisoner's control make it impossible to file a [habeas corpus] petition on time . . . [or] when conduct of the defendant has lulled the plaintiff into inaction." *Jihad v. Hvass*, 267 F.3d 803, 805 (8th Cir. 2001); *see also*

*White v. Dingle*, 616 F.3d 844, 847 (8th Cir. 2010) ("Under the doctrine of equitable tolling, the AEDPA's statutory limitations period may be tolled if a petitioner can show that (1) he has been diligently pursuing his rights and (2) an extraordinary circumstance stood in his way"). No such circumstances are present here. Stone's due process challenge to the fact-finding procedures of the 2005 commitment trial is time-barred.

Stone's claim is not only time-barred, but also procedurally defaulted. Before a prisoner may seek federal habeas relief, he must fairly present his federal claims to each level of the state courts. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). This requires more than an outline of the underlying facts or a broad invocation of due process. *Turnage*, 606 F.3d at 936 (quotations omitted). "At minimum, . . . the petitioner during direct appeal must have explicitly referred the state courts to the United States Constitution or federal case law." *Wyldes v. Hundley*, 69 F.3d 247, 251 (8th Cir. 1995) (citations omitted).

If the federal claim is not fairly presented to the state courts and the claim could no longer be reviewed because of a state procedural rule, the claim is procedurally defaulted. *Turnage*, 606 F.3d at 936. A federal court is prohibited from reviewing a defaulted habeas claim unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To show a fundamental miscarriage of justice, the petitioner must present "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial." *Schlup v. Delo*, 513 U.S. 298, 316 (1995); *see also Storey v. Roper*, 603 F.3d 507, 524 (8th Cir. 2010).

Stone did not fairly present his federal due process challenge to fact-finding procedures employed in the 2005 commitment trial to the Minnesota Court of Appeals or the Minnesota

Supreme Court. It is too late for him to do so now. While a civilly committed individual may bring a constitutional challenge to their commitment through a state petition for writ of habeas corpus, *Joelson v. O'Keefe*, 594 N.W.2d 905, 908 (Minn. Ct. App. 1999), that proceeding cannot substitute for a direct appeal, *State ex rel. Thomas v. Rigg*, 96 N.W.2d 252, 257 (Minn. Ct. App. 1959). Stone has had several opportunities to raise this particular federal due process claim in the state courts, but failed to do so. He did not argue federal due process in his appeal of the Minnesota Court of Appeals' 2006 decision or his appeal of the Minnesota Court of Appeals' 2009 decision. He did not appeal the final order of commitment order at all. Stone also failed to raise this federal due process claim in his Rule 60.02(f) motion, which the state court treated partially as a state habeas petition. This Court concludes that the Minnesota state courts would not now entertain Stone's due process challenge to fact-finding procedures at his 2005 commitment hearing through a state habeas petition.

Accordingly, Stone's due process challenge to fact-finding procedures is procedurally defaulted. Stone has not demonstrated cause for the default, actual prejudice, or that a fundamental miscarriage of justice would result if his claim is not heard. Consequently, this Court is barred from considering the claim on federal habeas review.

### B.    Stone's Challenge to the Reliability of Expert Testimony

Stone challenges the reliability of expert testimony offered at the 2005 commitment hearing on the ground that the experts relied on the vacated conviction in forming their opinions. Stone cites to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and Federal Rule of Evidence 702 as providing the legal foundation for his claim.

In calculating the timeliness of this claim, the one-year limitations period is again governed by 28 U.S.C. § 2254(d)(1)(A). The relevant judgment for this claim arose from the

proceedings following the vacation of the conviction in December 2007. After the district court vacated the conviction and ordered a new trial, the Minnesota Court of Appeals reversed the decision on September 22, 2009. Stone appealed and the Minnesota Supreme Court denied review on November 24, 2009. Judgment, however, was not entered until January 6, 2010. *See In re Civil Commitment of Stone*, No. A09-0574 (Minn. Ct. App. Jan. 6, 2010) (judgment). Stone had ninety days from the entry of judgment to petition the United States Supreme Court for review. *See* Sup. Ct. R. 13.1. This ninety-day period expired on or about April 6, 2010, which triggered the year-long limitations period set forth in § 2244(d)(1)(A). Stone filed his federal habeas petition on November 18, 2010, well within one year of April 6, 2010. Accordingly, this claim is timely.

Stone must still satisfy the fair presentation requirement, however. Although Stone argued to the state courts that the experts' testimony was unreliable, in light of the vacated conviction, he relied solely on state law to support his argument. He did not explicitly refer to federal case authority or the United States Constitution in his submissions to the state district court, the Minnesota Court of Appeals, or the Minnesota Supreme Court. (Answer App. Exs. 11, 13, 17.) Thus, the requirement of fair presentation is lacking.

The state courts would not entertain the claim now through a state habeas petition because such proceedings are limited to jurisdictional or constitutional challenges. *Joelson*, 594 N.W.2d at 908. Stone's claim, in contrast, is brought pursuant to *Daubert* and Federal Rule of Evidence 702. Thus, the claim is procedurally defaulted. Stone has not demonstrated cause for the default, actual prejudice, or that a fundamental miscarriage of justice would result if his claim is not heard. Consequently, this claim is barred from federal habeas review.

### C. Stone's Due Process Claims Arising from the Minnesota Court of Appeals' 2009 Decision

Stone raises two federal due process claims to the Minnesota Court of Appeals' 2009 decision: (1) he did not receive a new trial as ordered by the state district court when it granted his Rule 60.02(e) motion; and (2) absent the vacated conviction, there was insufficient evidence to support his civil commitment. As discussed in Part II.B. *supra*, claims arising from the Minnesota Court of Appeals' 2009 decision are timely. The Court therefore turns to the question of fair presentation.

Stone has never presented any federal claims to the Minnesota Court of Appeals or the Minnesota Supreme Court, including the round of appeals in 2009. However, as Respondent concedes, Stone still has the ability to present those claims through a state habeas petition. (Resp't's Mem. Supp. Answer at 10 ("Stone has not filed a habeas corpus petition in Minnesota, despite his specific ability to do so.")); *see* Minn. Stat. § 253B.23, subd. 5 (recognizing that individuals under an order of civil commitment may seek habeas relief); *Beaulieu v. Minn. Dep't of Human Servs.*, 798 N.W.2d 542, 546 (Minn. Ct. App. 2011) ("It is well-established that a person who is civilly committed 'can test the legality of his confinement by habeas corpus,' although 'the scope of inquiry is limited.'") (quotation omitted).

Anticipating that the Court would reach this conclusion, Stone asks the Court to hold his petition in abeyance and stay this action while he pursues his federal due process claims in a state habeas petition. In *Rhines v. Weber*, 544 U.S. 269, 277 (2005), the Supreme Court endorsed this stay-and-abeyance procedure in limited circumstances. To avail himself of the procedure, Stone must show good cause for his failure to exhaust, that his unexhausted claims are not "plainly meritless," and that he did not intentionally delay bringing the claims. *Id.* at 277-78.

A stay and abeyance is not appropriate under the facts of this case. First, Stone has not shown good cause for failing to exhaust his federal due process claims in the state courts. Indeed, he has offered no explanation whatsoever, and there is none to be gleaned from the record.

Second, the due process claims are plainly meritless. Stone's first due process claim is that he did not receive a new trial as ordered by the state district court. But the reason Stone did not receive a new trial was that the Minnesota Court of Appeals reversed the lower court's order granting the new trial. Due process is not violated when a district court obeys an appellate court's mandate. Indeed, the lower court is bound by the decision and must carry it into full effect. *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255 (1895).

Stone's second due process claim is essentially a challenge to the evidence supporting his civil commitment. He argues that if all evidence related to the vacated conviction was removed from the record, he would not meet the definition of an SDP. The Minnesota Court of Appeals considered the essence of Stone's argument in the context of Minnesota Rule of Civil Procedure 60.02(e), concluding that sufficient evidence remained in the record to support the commitment. Paramount among the evidence was Stone's own testimony "about his sexual activity with young girls, including the incident that led to the vacated conviction." *Stone II*, 2009 WL 2998131, at *2. The vacated conviction did not annul Stone's testimony about his conduct, "and those acts, not the conviction, supported the conclusion that he had engaged in a course of harmful sexual conduct warranting commitment." *Id.* Nor did the vacated conviction nullify the experts' opinions, which were based on Stone's actual conduct and the long-term emotional harm likely to be suffered by the two victims. *Id.* at *2 & n.5.

There is no constitutionally mandated minimum number of convictions needed to support a civil commitment. Indeed, an individual who has never been convicted of a sex offense may be

civilly committed. *E.g. Varner v. Monohan*, 460 F.3d 861, 865 (7th Cir. 2006); *Martin v. Mooney*, No. 06-1605 (DSD/RLE), 2007 WL 1306409, at *13-14 (D. Minn. May 3, 2007). Minnesota Statute § 253B.02 requires only "a finding of 'lack of adequate control' in relation to a properly diagnosed disorder or dysfunction, as well as findings of past sexual violence and resultant likelihood of future sexually dangerous behavior." *Linehan v. Milczark*, 315 F.3d 920, 927 (8th Cir. 2003). These requirements satisfy constitutional standards, *id.* at 927-28, and all are present in Stone's case.

Stone admitted sexually assaulting his four-year-old foster sister on at least three occasions when he was twelve years old, which the sister confirmed. *Stone I*, 711 N.W.2d at 834. He also threatened a thirteen-year-old girl with a knife, and followed or stalked another girl, which resulted in the issuance of a restraining order. *Id.* at 834-35. When he was eighteen, he admittedly had sexual intercourse with a fifteen-year old girl, despite knowing her age. *Id.* at 835. While on probation for that offense, Stone violated his conditions several times by contacting juvenile females, including telling one girl he wanted to "jump" her, and spending unsupervised time with minors. *Id.*

Two experts examined and tested Stone, concluding that he suffers from several mental disorders and that he would likely reoffend. *Id.* at 835-36, 840. In arriving at these conclusions, the experts considered Stone's age and lack of family support, his history of violent behavior, recidivism statistics, stressful living arrangements, the consequences of being labeled a sex offender, the proximity of his girlfriend's young child, his demonstrated inability to learn from his mistakes, his poor judgment involving controlled substances and young girls, his status as an untreated offender, and his lack of a plan to avoid reoffending. *Id.* at 840. Stone's "repeated violations of the law" was but one factor in the experts' considerations. *Id.* Testing confirmed the

experts' conclusions and unequivocally indicated a high likelihood that Stone would reoffend. *Id.* at 841.

In sum, the record contains sufficient evidence to support Stone's civil commitment, even after his second criminal conviction was vacated. The evidence remaining in the record establishes that Stone lacked adequate control because of a disorder or dysfunction, that he engaged in a past course of harmful sexual conduct, and that he is highly likely to engage in future sexually dangerous behavior. Accordingly, Stone's second federal due process challenge to the Minnesota Court of Appeals' 2009 decision is plainly meritless and does not warrant a stay and abeyance under *Rhines*.

### III.   RECOMMENDATION

All of Petitioner Danny Allen Stone's claims are time-barred, procedurally defaulted, or plainly meritless. Accordingly, **IT IS HEREBY RECOMMENDED** that the Petition for Writ of Habeas Corpus (Doc. No. 11) be **DENIED** and that **JUDGMENT BE ENTERED ACCORDINGLY**.


Dated: October 13, 2011

                                             s/ *Jeanne J. Graham*
                                             JEANNE J. GRAHAM
                                             United States Magistrate Judge


### NOTICE

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **October 28, 2011**. A party may respond to the objections within fourteen days after service thereof. Any objections or responses shall not exceed 3,500 words. The district judge will make a de novo determination of those portions of the Report and Recommendation to which objection is made.